BUSTAMANTE, Judge (dissenting). {29} Respectfully, I disagree with the conclusion that the War Powers Clause does not provide Congress a font of power sufficient to subject the states to suit under USERRA. Before Katz, it seemed that the Supreme Court had foreclosed any argument that Article I could be a source of power sufficient to overcome state sovereignty claims. But the majority in Katz made clear that the Court’s broad “dicta” in Seminole Tribe and Alden was just that: dicta. While Katz did not signal a full retreat from recent orthodoxy, it did make room for debate — at least as to those provisions of Article I, such as the War Powers Clause, which have not been addressed before. {30} The first task is to frame the debate. What should the courts take into account in deciding the potential reach of Congress under a given Article? The list of germane topics will vary with the provisions under consideration. As such, it is not surprising that Katz is not helpful here when it discusses the nature of bankruptcy jurisdiction and practice. But there are general topics that cut across the Articles. Katz is relevant when it discusses the need for national uniformity with regard to bankruptcy laws. In doing so, Katz revived uniformity as a valid topic of consideration in Article I jurisprudence. {31} Uniformity and concentration of authority loom large in the area of national defense — the subject of the War Powers Clause. As the United States in its amicus brief notes, the Clause both delegates war powers to the national government exclusively and prohibits the states from making war, absent consent of the Congress. (U.S. Amicus Brief 16, 20). It seems obvious that national defense and foreign affairs are areas in which the country must speak as one. {32} Intertwined with uniformity in this context are the nature and source of the power addressed by the War Powers Clause. By “nature” I mean to encompass the whole of the subject — including sending our armed forces to battle and the interest of the nation in protecting our service members in all ways possible when they return to civilian life. It cannot be gainsaid that the two are part of a spectrum of interests encompassed by the War Powers Clause. By “source” I refer to the oft-repeated observation that the individual states did not possess war powers at the time of the Constitutional Convention. The states had no sovereign interest to protect or cede when they approved the War Powers Clause. The lack of state sovereignty in this area then must have some effect on measuring the strength of the claim of immunity now. {33} Comparing the interests and history at work in Katz with those at work here leads me to conclude that the War Powers Clause presents the more compelling case. The commercial interests addressed by the Bankruptcy Clause are important. But national defense stands on higher ground and provides a stronger basis to disallow state interference with Congress’ will than that found in Katz. {34} Similarly, the state’s historical lack of sovereignty over the conduct of war argues against its resurrection here. In asserting this, I am not ignoring the difference between the power to conduct war and the power to refuse to allow suits seeking monetary compensation. But the distance between the two is not so vast that it cannot be spanned. The Court in Katz faced the same issue — as the dissent in Katz points out — yet found it necessary to resolve it in favor of Congressional power. The points made by the dissent in Katz simply cannot be made with equal force in connection with the War Powers Act. {35} Toa great degree, the Majority and I are simply prognosticating. A full debate with regard to the War Powers Clause as a source of power for USERRA has not yet been held before the United States Supreme Court. When it is, I believe the Court will hold that this is another Article I provision which should not be controlled by the dicta in Seminole Tribe and Alien. The matter is hardly without doubt. But I believe that Appellant’s arguments and those of the United States.in its amicus brief are closer to the mark. MICHAEL D. BUSTAMANTE, Judge